## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LAURA KAMPSTRA,**

           **Plaintiff,**

**v.**                                   **Case No: 6:22-cv-773-PGB-EJK**

**MATTHEW POND, STEVE
KOUBEK, BRANDON EDER,
EVAN JONES, JOSEPH AIANI,
ALEXANDER SUDMAN,
MAURIZO IERVASI and CITY
OF MELBOURNE, FLORIDA,**

           **Defendants.**

_____/

## ORDER

This cause comes before the Court on Defendants Joseph Aiani, Brandon Eder, Maurizo Iervasi, Evan Jones, Steve Koubek, Matthew Pond, and Alexander Sudman's (collectively the "**Defendant Officers**") Motion to Dismiss (Doc. 33), Defendant City of Melbourne's Motion to Dismiss (Doc. 37), and Plaintiff Laura Kampstra's combined response in opposition (Doc. 42 (the "**Response**")). Upon consideration, both Motions to Dismiss are due to be denied.

## I.    BACKGROUND[1]

This case stems from the fatal shooting of Richard Kampstra (the "**Decedent**") by officers in the Melbourne Police Department, a municipal department of Defendant City of Melbourne. (Doc. 22). Decedent is a military veteran who had previously suffered a brain injury that affected his brain function and for which he took medication. (*Id.* ¶¶ 15, 22–23). Plaintiff is the surviving spouse of and personal representative for the Estate of the Decedent. (*Id.* ¶ 1). The Defendant Officers are all sworn law enforcement officers employed by Defendant City of Melbourne, Florida. (*Id.* ¶¶ 2–9).

On April 5, 2020, the daughter of Decedent visited Plaintiff and Decedent at their Melbourne, Florida residence and was helping to clean their garage. (*Id.* ¶¶ 13–14). Decedent became agitated, yelled at his daughter, and threw a bottle of Febreeze at her which struck her foot. (*Id.* ¶ 16). Decedent's daughter left the residence and called 911. (*Id.* ¶¶ 17–18).

About an hour later, several Defendant City of Melbourne police officers arrived on the scene, including the Defendant Officers. (*Id.* ¶¶ 9, 19). Plaintiff was removed from the house, leaving Decedent in the residence alone (*Id.* ¶ 20). Plaintiff informed the officers, including the Defendant Officers, of the fact that Decedent had brain damage and was not taking his medication prior to their entry into the residence. (*Id.* ¶¶ 22–23). The officers located Decedent in a bedroom, and

---

[1] This account of the facts comes from the Plaintiff's Amended Complaint. (Doc. 22). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

at some point after initial contact, the officers learned Decedent had a knife and that Decedent was threatening to harm himself. (*Id.* ¶¶ 21, 24).

Decedent told the officers he was upset and that he wanted them to leave. (*Id.* ¶ 25). The Defendant Officers refused to leave and instead took up tactical positions around Decedent's bedroom. (*Id.*). Decedent exited the bedroom holding a gun in "high port" position—that is, the barrel of the firearm was pointed towards the ceiling, away from any officers, and his fingers were not on the trigger. (*Id.* ¶ 26). Decedent did not point the firearm at any officer, but the Defendant Officers immediately began shooting at Decedent, with each individual Defendant Officer firing at least one time. (*Id.* ¶¶ 27–29). In total, the Defendant Officers shot Decedent twenty-seven times, including multiple shots to the back. (*Id.* ¶ 29). The injuries from these gunshots caused Decedent's death. (*Id.*).

Plaintiff later filed the Amended Complaint on behalf of Decedent's Estate to remedy his alleged injuries, asserting seven 42 U.S.C. § 1983 excessive force claims against the Defendant Officers individually and a state wrongful death claim under vicarious liability against Defendant City of Melbourne. (*Id.* ¶¶ 31–86). The Defendant Officers moved to dismiss the seven § 1983 claims (Doc. 33), the City of Melbourne moved to dismiss the wrongful death claim (Doc. 37), and Plaintiff responded in opposition to both motions (Doc. 42). As such, this matter is ripe for review.

## II.     STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.    DISCUSSION

The Defendant Officers argue the individual claims against them must fail because they are entitled to qualified immunity.[2] (Doc. 33, pp. 4–9). Relatedly, Defendant City of Melbourne argues that because the suits against the individual Defendant Officers are inadequate, Plaintiff's wrongful death vicarious liability cause of action is also inadequate.[3] Addressing each in turn, the Court finds that at this procedural posture these arguments fail.[4]

---

[2]    Each claim against the individual Defendant Officers is identical beyond their attachment to different individual Defendant Officers. (*See* Doc. 22, ¶¶ 31–79). Accordingly, each shall be addressed in conjunction as the analysis is identical.

[3]    Defendant City of Melbourne further argues the Amended Complaint is an impermissible shotgun pleading. (Doc. 37, pp. 4–7). For the following reasons, however, this contention is without merit.

There are four general categories of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts;" (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief;" and (4) a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. None of the four shotgun pleading categories straightforwardly applies here. More importantly, the Court finds that Plaintiff's Amended Complaint adequately puts Defendant City of Melbourne on notice that Plaintiff is claiming the Defendant City is vicariously liable for the Defendant Officers' alleged clearly excessive use of force and, thus, the wrongful death of Decedent. While not dispositive, Defendant City of Melbourne mounts a plausible, if not ultimately convincing, defense to this particular theory.

[4]    Of course, Defendants are welcome to reraise these arguments after the benefit of discovery on an appropriate motion.

### A.      Qualified Immunity for the Defendant Officers

"Qualified immunity protects government officials performing discretionary functions from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1343–44 (11th Cir. 2016); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome an officer's qualified immunity defense, a plaintiff must show "the law that governs the case is 'clearly established' at the time of the alleged violation." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 955 (11th Cir. 2019). To qualify as "clearly established," the "legal principle must be 'settled' and 'clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). If the government officials were acting within the scope of their discretionary authority, then the plaintiff must show that qualified immunity is inappropriate by alleging facts that establish the government officials violated his rights and by showing that those rights were clearly established at the time of the misconduct. *Jacoby*, 835 F.3d at 1344; *see Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."); *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021). The court "ha[s] discretion to decide which of the two prongs of the qualified[] immunity analysis to tackle first," and the

government officials are "entitled to qualified immunity if the plaintiff fails to establish either one." *al-Kidd*, 563 U.S. at 735; *Jacoby*, 835 F.3d at 1344. In the end, "[t]he critical question is whether the law gave the officer 'fair warning' that his conduct was unconstitutional." *Piazza*, 923 F.3d at 955 (quoting *Glasscox v. City of Argo*, 903 F.3d 1207, 1217–18 (11th Cir. 2018)). The Court will first address whether Decedent's Fourth Amendment rights were violated as alleged and then whether those rights were clearly established at the time of the alleged shooting.

### 1. Excessive Force Allegations

The Fourth Amendment protects against objectively unreasonable searches and seizures by the government. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Apprehension by deadly force constitutes a seizure." *Wilson v. Parker*, 746 F. App'x 860, 863 (11th Cir. 2018).[5] "Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (quotation omitted). "No precise or 'rigid preconditions' exist for determining when an officer's use of deadly force is excessive." *Beckman v. Hamilton*, 732 F. App'x 737, 740 (11th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372 (2007)). Rather, courts must determine on a case-by-case basis whether the force used was objectively reasonable under the totality of the circumstances. *Graham*, 490 U.S. at 396; *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007)

---

[5] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

("Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, we must slosh our way through the fact bound morass of reasonableness.") (quotations, alterations, and citations omitted). However, "[i]n cases involving [allegations] of excessive force, it is doctrinal gospel that [courts] do not view an officer's actions with the 20/20 vision of hindsight." *Shaw v. City of Selma*, 884 F.3d 1093, 1101 (11th Cir. 2018); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009) ("Our task is not to evaluate what the officers could or should have done in hindsight. The sole inquiry is whether the officer's actions, as taken, were objectively reasonable under all the circumstances."). As such, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

To aid in this inquiry, the Supreme Court and the Eleventh Circuit have provided factors to guide courts in their determination of whether an officer's use of deadly force was objectively reasonable: (1) the severity of the crime or crimes at issue; (2) whether an officer has probable cause to believe either that the suspect poses a threat of serious physical harm to those at the scene or that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm; (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight; (4) whether the suspect poses an immediate threat to the

safety of the officers or others; (5) whether the officer reasonably believes the use of deadly force was necessary to prevent escape or prevent the suspect from inflicting further serious physical harm; or (6) whether the officers gave some warning about the possible use of deadly force, if feasible. *See Graham*, 490 U.S. at 396; *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985); *Spencer v. City of Orlando*, 725 F. App'x 928, 931 (11th Cir. 2018); *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016). Notably, "[a] mechanical application of these factors is not appropriate" because they are not "prerequisites to the lawful application of deadly force by an officer seizing a suspect" but instead only some contextual considerations that may apply differently in each circumstance. *See Scott*, 550 U.S. at 382–83; *see also Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir. 2010) (citations and quotations omitted).

Here, the Defendant Officers' use of deadly force was not objectively reasonable based on the totality of the circumstances alleged in the Amended Complaint.[6] To start, domestic violence is never a trivial matter, but the Amended Complaint details that Decedent had only yelled at his daughter and thrown a bottle of Febreeze at her to trigger the 911 call. (Doc. 22, ¶¶ 15–16). Alone, such an allegation is not so severe as to warrant the Defendant Officers' responding with

---

[6] The Court recognizes that discovery may yield a slightly different factual picture that may change the totality of the circumstances analysis. While it is advisable for courts to resolve qualified immunity issues "at the earliest possible stage in litigation" as the defense is "an *immunity from suit* rather than a mere defense to liability," to rule otherwise here would contravene countervailing notice pleading considerations. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal quotations omitted) (emphasis in original).

deadly force. At the same time, the Defendant Officers eventually were alerted that Decedent possessed a knife and was threatening to harm himself, which would have constituted probable cause for the Defendant Officers to believe that Decedent posed a threat of serious physical harm to those at the scene. (*Id.* ¶ 21). Moreover, this belief was likely confirmed when Decedent emerged from the room with a gun. (*Id.* ¶ 26). To be sure, "the mere presence of a gun or other weapon is not enough to warrant the exercise of deadly force." *Perez*, 809 F.3d at 1220; *Lundgren v. McDaniel*, 814 F.2d 600, 602–03 (11th Cir. 1987) (noting fact that the alleged victim had a gun was not dispositive on the question of the force's reasonableness). Instead, "[w]here the weapon was, what type of weapon it was, and what was happening with the weapon are all inquiries crucial to the reasonableness determination." *Perez*, 809 F.3d at 1220. And here Plaintiff alleges that Decedent emerged from the room with his gun in "high port position" and that he did not have his finger on the trigger. (Doc. 22, ¶ 26). In this context and based on the allegations in the Amended Complaint alone, it is not yet clear whether Decedent was actively resisting arrest or attempting to evade arrest by emerging in this way. As such, it is further unclear whether Decedent posed a threat to the safety of the officers or others and relatedly whether the officers reasonably believed the use of deadly force was necessary to prevent escape or prevent the suspect from inflicting further serious physical harm. *See Brown v. Newton Cnty. Sheriff's Off.*, 273 F. Supp. 3d 1142, 1152 (N.D. Ga. 2017) (finding a plausible Fourth Amendment violation and denying qualified immunity at the motion to dismiss

stage based on allegations of an officer shooting of a citizen who was known to be mentally unstable and holding a firearm yet did not threaten the officers, shoot the gun, attempt to flee, or refuse to comply with any orders). For example, the allegations in the Amended Complaint are equally consistent with Decedent seeking to surrender, even if it would have been advisable for Decedent not to do so with a firearm in his hand. (*See id.* ¶¶ 10–29). Most crucially, Plaintiff alleges the Defendant Officers began shooting "immediately" after Decedent emerged, and there are no allegations that the Defendant Officers gave Decedent some warning about the possible use of deadly force. (*See id.*). When viewed in the light most favorable to Plaintiff, these well-pled allegations are sufficient in totality to raise a plausible inference that the Defendant Officers' use of deadly force was not objectively reasonable.

### 2.  *Clearly Established Law*

Such a finding does not end the inquiry as the Defendant Officers could still be entitled to qualified immunity if Plaintiff cannot further show that this right was clearly established on April 5, 2020, the date of the incident. There are three ways in which the Plaintiff may show that Decedent's right was clearly established: "(1) caselaw with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of caselaw." *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1291–92 (11th Cir.

2009) (citations omitted). When it comes to caselaw in the Eleventh Circuit, statutory or constitutional rights are "clearly established" "only by decisions of the [United States] Supreme Court, [the] Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jacoby*, 835 F.3d at 1343–44 (quoting *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997)). The underlying "salient question" is whether the state of the law at the time of the incident gave the Defendant Officers "fair warning" that their conduct was unlawful. *See Hope v. Pelzer,* 536 U.S. 730, 741, (2002).

It has been clearly established since 1987 within the Eleventh Circuit that "shooting a suspected felon," even one who possessed a firearm but "who was apparently neither fleeing nor threatening the officers," is "an unreasonable seizure clearly violat[ing] [F]ourth [A]mendment law." *Lundgren*, 814 F.2d at 603; *see also Mercado v. City of Orlando*, 407 F.3d 1152, 1154–55, 1157, 1159–1160 (11th Cir. 2005) (holding that deadly force cannot be used in a situation that requires less than deadly force because, specifically, the plaintiff there made no threatening moves and did not have time to comply with the officer's command to drop a weapon before the officer used deadly force against him). In *Lundgren*, a shopkeeper and his wife were asleep in their video store behind a desk after its front window was broken. *Id.* at 602. Later and upon finding the broken shop window, police officers entered the store, believing a burglary was occurring. *Id.* When the shopkeeper stood up from behind the desk with a pistol, the two police officers fired and killed him. *Id.* After a verdict in the shopkeeper's favor, the

Eleventh Circuit affirmed and found that the officers were not entitled to qualified immunity. *Id.* at 602–03. Likewise, read in the light most favorable to Plaintiff, the allegations in the Amended Complaint evince a situation where Decedent was both justifiably suspected of a crime in his own home, possessed a firearm, and yet plausibly was not fleeing or threatening the officers despite the presence of a firearm. Consequently, the law was clearly established such that the Defendant Officers would have had fair warning that their alleged behavior under the circumstances was violative of the Fourth Amendment. Therefore, while *Lundgren* and *Mercado* may not be factually on point after discovery, Plaintiff has at this time alleged enough to defeat the Defendant Officers' assertion of qualified immunity and thus the corresponding Motion to Dismiss.

### B.    The Wrongful Death Claim

Plaintiff alleges that Defendant City of Melbourne is liable for the Decedent's wrongful death under Florida law. (Doc. 22, ¶¶ 80–86). In the state of Florida, a cause of action for wrongful death arises "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person . . . and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued . . . ." FLA. STAT. § 768.19. Read in the light most favorable to Plaintiff, the Amended Complaint contains allegations that Defendant City of Melbourne is vicariously liable for the wrongful death of Decedent through the Defendant Officers' unreasonable use of excessive force via the intentional tort of battery. (Doc 22, ¶¶ 81–83).

"[A] Florida municipality may be held liable for the intentional torts of its employees committed within the scope of their employment." *City of Miami v. Simpson*, 172 So. 2d 435, 436 (Fla. 1965). Under Florida law, a battery occurs when a person "actually and intentionally touches or strikes another person against the will of the other" or "intentionally causes bodily harm to another person." *Wilson v. Williams*, No. 3:19-cv-822, 2019 WL 6324265, at *5 (M.D. Fla. Nov. 26, 2019) (citing FLA. STAT. § 784.03). A long-recognized exception is that law enforcement officers carrying out their lawful duties are ordinarily not liable for battery unless the force applied in carrying out those duties is clearly excessive and not in good faith. *See City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) ("A battery claim [against a law enforcement officer] for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances.") (citing *Jennings v. City of Winter Park*, 250 So. 2d 900, 902 (Fla. 4th DCA 1971) and RESTATEMENT (SECOND) OF TORTS § 132 cmt. a (AM. L. INST. 1965)); *see also Mazzilli v. Doud*, 485 So. 2d 477, 481 (Fla. 3d DCA 1986). To that end, Florida law provides that an officer is justified in using force, even deadly force, which he reasonably believes to be necessary. *See* FLA. STAT. § 776.05. Finally, a Florida municipality may be "held liable for an employee's intentional act(s) as long as the employee is acting within the course and scope of his employment and the act or omission is not committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of the plaintiff's rights." *City of Boynton Beach v. Weiss*, 120 So. 3d 606, 611 (Fla. 4th DCA 2013)

(citing *Simpson*, 172 So. 2d at 436 and FLA. STAT. § 768.28 (delineating when the state of Florida has waived sovereign immunity)). Plaintiff adequately alleges that the Defendant Officers were acting within the scope of their employment. (Doc. 22, ¶¶ 2–9, 19–29). Therefore, Plaintiff must plead enough for the Court to plausibly find (1) the Defendant Officers actions were not in good faith and (2) the force applied was clearly excessive under the circumstances. *See Estate of Osorio v. Miami-Dade Cnty.*, 191 F. Supp. 3d 1366, 1368 (S.D. Fla. 2016) (citing *Sanders*, 672 So.2d at 47).

As for good faith, "[t]he [municipality] is immune as a matter of law only if the acts are so extreme as to constitute a clearly unlawful usurpation of authority the [officer] does not rightfully possess, or if there is not even a pretense of lawful right in the performance of the acts." *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996) (rejecting the argument that a police officer who lunged at a defendant in custody, grabbed him by the throat, and kicked him was, as a matter of law, acting outside the scope of his employment or in a willful and wanton manner) (internal citations omitted);[7] *Carestio v. Sch. Bd. of Broward Cnty.*, 866 So. 2d

---

[7] The Supreme Court of Florida explained:

> Here, [the deputy] clearly had the lawful authority to restrain arrestees, detain them, or even respond with force in appropriate situations. His office gave him that authority, and he therefore cannot be described as a usurper. The fact that [the deputy] may have intentionally abused his office does not in itself shield the [superior officer or municipality] from liability. In sum, the question must be put to the fact-finder whether [the deputy] acted

754, 756–57 (Fla. 4th DCA 2004) (concluding that school employees who kicked and punched a student after removing him from class for disruptive behavior were acting within the scope of employment but directing the factfinder to determine whether the employees were acting in a willful and wanton manner). The Defendant Officers here were responding to a domestic violence distress call and acting to restore the peace involving an armed and reportedly violent and armed suspect. (Doc. 22, ¶¶ 9–24).  Good faith is thus plausibly satisfied based on the Amended Complaint. Finally, for the reasons detailed *supra* at III.A.1 in reference to the Defendant Officers' individual actions, it is also at least plausible that the deadly force used was clearly excessive and therefore that Defendant City of Melbourne is vicariously liable.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Defendant Officers and the City of Melbourne's Motions to Dismiss (Docs. 33, 37) are **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on February 17, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

---

in bad faith, with malicious purpose, or in a manner exhibiting
wanton or willful disregard of human rights, safety, or property.

*McGhee*, 679 So. 2d at 733.

Copies furnished to:

Counsel of Record
Unrepresented Parties